Filed 3/18/25  P. v. Robinson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAQUAN ROBINSON,<br><br>    Defendant and Appellant. | B334692<br>(Los Angeles County<br> Super. Ct. No. BA461666) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Maria Leftwich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe J. Leszkay and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

The Racial Justice Act (RJA) was enacted to prohibit the state from seeking or obtaining a criminal conviction on the basis of race. As relevant here, a violation occurs when a defendant is charged with a more serious offense than defendants of other races who engage in similar conduct and are similarly situated, and the prosecution more frequently sought convictions for more serious offenses against people of the defendant's race. (Pen. Code, § 745, subd. (a)(3).)[1]

Defendant Jaquan Robinson, an African American, was charged with two counts of human trafficking of a minor for a commercial sex act by force or fear, among other charges. Robinson filed a motion asserting that the decision to charge him with human trafficking violated the RJA. The motion included statistical analysis, aggregate data, and an expert's opinion alleging racial disparities by the Los Angeles County District Attorney's Office (District Attorney) in filing human trafficking charges. The trial court denied the motion, finding Robinson did not satisfy the prima facie showing that he was similarly situated with defendants of other races who engaged in similar conduct yet were not charged with human trafficking. Shortly thereafter, Robinson entered a plea of no contest and appealed from the court's order denying his motion.

We agree with the trial court that Robinson did not meet his prima facie burden establishing a violation under section 745, subdivision (a)(3). Therefore, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

# PROCEDURAL HISTORY

## I. *Information*

In February 2018, the District Attorney filed an information charging Robinson with two counts of human trafficking of a minor for a commercial sex act by force or fear (§ 236.1, subd. (c)(2), counts 1 and 5), two counts of kidnapping (§ 207, subd. (a), counts 2 and 6), two counts of forcible rape of a child over 14 years old (§ 261, subd. (a)(2), counts 3 and 9), two counts of forcible oral copulation of a child over 14 years old (§ 288a, subd. (c)(2)(C), counts 4 and 10), and two counts of kidnapping to commit another crime (§ 209, subd. (b)(1), counts 11 and 12).[2]  As to counts 2, 3, 6, 9, 11, and 12, it was further alleged Robinson personally used a dangerous or deadly weapon or a firearm in the commission of the offense and committed the offense against more than one victim.  (§ 667.61, subds. (a), (c), (e)(3) & (4).)

## II. *The RJA Motion*

On May 10, 2021, Robinson filed a motion to compel discovery under the RJA (§ 745, subd. (d)).  The request was based on an alleged "pattern of overcharging [African American] men for human trafficking offenses carrying a life sentence, when the conduct amounts to pimping and pandering."

On August 11, 2021, the District Attorney produced a disk containing data of all cases during a 10-year period (July 1, 2011 through June 30, 2021), in which the District Attorney filed charges for human trafficking (§ 236.1).  While the data consisted of 1,001 human trafficking cases, the race of the defendant was only available for 50 cases predating 2014.  Pursuant to

---

[2]     The information also charged codefendant Denzel Everett with kidnapping (§ 207, subd. (a), count 7) and human trafficking of a minor for a commercial sex act by force or fear (§ 236.1, subd. (c)(2), count 8).  He is not a party to this appeal.

3

a California Public Records Act (CPRA) request, the District Attorney subsequently produced 7,100 cases charging pimping and pandering (§ 266), prostitution (§ 647, subd. (b)), and human trafficking (§ 236.1) over a 10-year period (June 2, 2012 through June 1, 2022). In that data set, the defendant's race was present in 90 percent of the cases.

On June 12, 2023, defendant filed a motion for relief under the RJA. (§ 745, subd. (c).) As relevant here, the motion referred to subdivision (a)(3) of section 745 as a potential violation. This subdivision provides: "The defendant was charged or convicted of a more serious offense than defendants of other races . . . who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race . . . in the county where the convictions were sought or obtained." (§ 745, subd. (a)(3).) Robinson primarily relied on a report produced by Dr. Bryan L. Sykes, a court appointed expert, who reviewed and analyzed the data received pursuant to the CPRA request. In his report, Dr. Sykes "found racial disparities across the data, [and] the evidence is most disparate with human trafficking charges." African American defendants "are twice as likely to have a felony human trafficking case filed against them than [Caucasians]," and over 82.2 percent of African American defendants "have had a felony case filed against them for human trafficking," compared to roughly 40.1 percent of Caucasian defendants. As to human trafficking charges under section 236.1, subdivision (c)(2), African American defendants comprised 85.7 percent of those cases, compared with zero percent of Caucasian defendants. While African Americans comprise only nine percent of Los Angeles County, "[n]early half of all cases in the data

4

provided have African American defendants." The District Attorney filed an opposition.

On September 18, 2023, the trial court denied the motion without holding an evidentiary hearing. The court reasoned Robinson did not satisfy a prima facie showing that he was charged with a more serious offense than defendants of other races who are similarly situated and have engaged in similar conduct. The court concluded that the evidence of racial disparity alone was not sufficient to meet his burden.

III.  *Plea*

On October 2, 2023, the information was amended by interlineation to add count 14 alleging another human trafficking charge (§ 236.1, subd. (c)(1)).[3] Pursuant to a plea agreement, defendant pled no contest to forcible rape of a child over 14 years old (§ 261, subd. (a)(2), count 3), kidnapping (§ 207, subd. (a), count 6), and human trafficking of a minor for a commercial sex act (§ 236.1, subd. (c)(1), count 14). As to the forcible rape, Robinson admitted to the aggravating circumstance that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness. (Cal. Rules of Court, rule 4.421(a)(1).) As to both the forcible rape and kidnapping, defendant also admitted to the allegation that the crimes involved the same victim on the same occasion. (667.6, subd. (c).) Robinson was sentenced to 19 years in state prison pursuant to the plea agreement. The court dismissed the remaining counts and allegations pursuant to that agreement.

---

[3]    It is unclear from the record why this charge was added as count 14 instead of count 13.

Robinson timely appealed and was granted a certificate of probable cause.

## DISCUSSION

I. *Governing Law*

The Legislature enacted the RJA with the intent "to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing." (Stats. 2020, ch. 317, § 2, subd. (i); see *Young v. Superior Court* (2022) 79 Cal.App.5th 138, 149–150.) "To further the goal of eliminating racial bias in criminal proceedings, subdivision (a) of section 745, provides that '[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin.'" (*People v. Lashon* (2024) 98 Cal.App.5th 804, 809.) The RJA "sets forth four categories of conduct, any of which, if proved, is enough to 'establish' a violation of section 745, subdivision (a)." (*Young v. Superior Court, supra,* at p. 147.) The category relevant here is section 745, subdivision (a)(3).

Under section 745, subdivision (a)(3), a RJA violation occurs when "[t]he defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity, or national origin in the county where the convictions were sought or obtained." (§ 745, subd. (a)(3).)

The RJA statute describes "similarly situated" as "factors that are relevant in charging and sentencing are similar and do not require that all

6

individuals in the comparison group are identical. A defendant's conviction history may be a relevant factor to the severity of the charges, convictions, or sentences. If it is a relevant factor and the defense produces evidence that the conviction history may have been impacted by racial profiling or historical patterns of racially biased policing, the court shall consider the evidence." (§ 745, subd. (h)(6).)

The statute also defines "more frequently sought or obtained" or "more frequently imposed" as "the totality of the evidence demonstrates a significant difference in seeking or obtaining convictions . . . comparing individuals who have engaged in similar conduct and are similarly situated, and the prosecution cannot establish race-neutral reasons for the disparity. The evidence may include statistical evidence, aggregate data, or nonstatistical evidence." (§ 745, subd. (h)(1).)

A defendant may seek relief under the RJA by way of motion prior to the entry of judgment. "If a motion is filed in the trial court and the defendant makes a prima facie showing of a violation . . . , the trial court shall hold a hearing." (§ 745, subd. (c).) A prima facie showing means "that the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred. For purposes of this section, a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (§ 745, subd. (h)(2).) In other words, "a defendant seeking relief under the [RJA] must state fully and with particularity the facts on which relief is sought, and include copies of reasonably available documentary evidence supporting the claim. The court should accept the truth of the defendant's allegations, including expert evidence and statistics, unless the allegations are conclusory, unsupported by the evidence presented in support of the claim, or demonstrably contradicted

7

by the court's own records.  [Citation.]  And . . . the court should not make credibility determinations at the prima facie stage."  (*Finley v. Superior Court* (2023) 95 Cal.App.5th 12, 23 (*Finley*), fn. omitted; see also *Mosby v. Superior Court* (2024) 99 Cal.App.5th 106, 131 (*Mosby*) ["*Finley's* analysis provides a reasonable standard [for the prima facie case] based on long-standing habeas corpus law"].)

We agree with the parties that the de novo standard of review applies to the trial court's legal conclusion that Robinson failed to carry his burden of making a prima facie showing.  (See *People v. Howard* (2024) 104 Cal.App.5th 625, 650.)


II.    *Analysis*

Robinson contends the trial court erred in finding that he failed to make a prima facie showing of a RJA violation under section 745, subdivision (a)(3).  He asserts the statistical evidence of racial disparity by the District Attorney in filing human trafficking charges was sufficient to meet his burden at the prima facie stage.

*Mosby* is instructive.  In that case, the petitioner filed successive motions for relief under subdivision (a)(3) of section 745 based on the district attorney's decision to seek the death penalty for special circumstance murder.  (99 Cal.App.5th at pp. 111–112.)  The trial court denied both motions without holding an evidentiary hearing.  The petitioner filed a petition for writ of mandate, contending that the plain language of the statute supports "only aggregate and statistical evidence is required to make a prima facie case."  (*Id.* at p. 122.)  At the outset, the appellate court noted that the parties' briefing focused on the "similarly situated" language of the statute and failed to address the importance of the language that the petitioner must show that

8

he was "engaged in similar conduct" as defendants of other races. (*Id.* at p. 128.) However, at oral argument, the petitioner acknowledged that there is a requirement that the evidence must establish similar conduct, which "could be shown by statistics alone, factual evidence, or a combination of both types of evidence." (*Ibid.*)

The *Mosby* court held that "[t]he plain language of the statute supports that *as part* of the prima facie showing, a defendant must show that . . . defendants [of other races] are engaged in similar conduct." (*Mosby, supra,* 99 Cal.App.5th at pp. 128–129, italics added.) The court explained that because "the Legislature did not provide a definition of 'similar conduct,' we rely on the plain meaning, which refers to 'behavior' of a person on a particular occasion that logically refers to the underlying facts of the crimes rather than just a recitation of the charged crime, and as the term has traditionally been defined in other criminal cases." (*Id.* at p. 129.) The court ultimately granted the writ petition, concluding that the petitioner presented evidence to establish a prima facie case. (*Id.* at pp. 129, 132–133.) The petitioner  presented statistical evidence that the district attorney more frequently sought the death penalty against African Americans. He also presented underlying facts of several cases in which the district attorney did not seek the death penalty for defendants of other races.[4]

Robinson failed to make the necessary prima facie showing under the RJA. He solely relied on the statistical evidence of racial disparity by the District Attorney in charging human trafficking. The statistics provide no information showing defendants of other races were charged with lesser

---

[4]    The court did not determine if statistics alone could meet the prima facie case. (*Mosby, supra,* 99 Cal.App.5th at p. 129.) However, it made clear that the statistics would need to include a showing of "similar conduct."

crimes, such as pimping and pandering, despite being engaged in similar conduct. While the *Mosby* court did not "establish a bright-line rule of what constitutes sufficient evidence of 'similar conduct' in all cases," here Robinson did not attempt to compare even one case involving a defendant of a different race with his own. (*Mosby, supra,* 99 Cal.App.5th at p. 133.) On appeal, Robinson argues that *Mosby* was wrongly decided and directs us to broadly construe "similar conduct," for purposes of the prima facie stage, to be evidence of racial disparity by the district attorney in charging a particular crime. We decline Robinson's invitation to depart from *Mosby*. We find the *Mosby* court's reasoning persuasive as it gives effect to the plain meaning of section 745, subdivision (a)(3). (*People v. Johnson* (2002) 28 Cal.4th 240, 244 ["If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs"].) The RJA statute requires a defendant show that defendants of other races are engaged in similar conduct. Therefore, a defendant must present the underlying facts of the crimes. Robinson did not do that here. We conclude Robinson did not establish a substantial likelihood that a violation of the RJA occurred.

//

//

//

//

//

//

//

//

10

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


COLLINS, J.


MORI, J.